and Jethro Pitts. Mr. Mejia. Good morning. If it pleases the Court, Your Honor, in Mr. Munoz's appeal, we raised two issues. The first, whether the District Court erred, excuse me, the second issue is whether the District Court erred in calculating Mr. Munoz's sentencing guidelines and, under plain error, whether the Court erred in not affording him a minor role adjustment for his participating in the prosecuted offense. The first offense, the first issue is whether or not the larger or broader conspiracy was proven at trial to actually be two separate conspiracies or whether the defendant, Mr. Munoz's participation was so minor or so slight as to establish dual conspiracies or multiple conspiracies, therefore of fatal variance, depriving him of a fair trial. Can I ask you just a quick question off the bat? Yes, sir. Where is it from the face of the indictment that you get the idea that the government charged a single conspiracy? Yes, the cover page names 20 defendants. The But aren't there counts one, there's a conspiracy involving Munoz, right? And then count three, separate conspiracy involving Pitts. Do I have that right? They are charged in separate counts one and three. In count one, Mr. Munoz is charged with 10 individuals or 8 or 9 individuals. In count three, Mr. Pitts is charged with about 11 or 12 individuals. They're all common with respect to a Mr. Watkins, who's a cooperating informant. The jury, however, in the trial as it proceeded, showed that Mr. Munoz's participation or his involvement really was as to one day. Your honors, I get to get back to what Judge Newsome was asking you. In most of these cases, at least the way I've seen them generally play out, a claim post-conviction is usually that an indictment charged one conspiracy, but the evidence at trial showed two or three conspiracies and therefore there was a fatal variance that requires reversal. This case, I think you seem to be making the completely opposite argument, which doesn't mean it's wrong, but the argument is indictment charged two conspiracies, but there was really one. Is that the argument you're making? That the government charged two but proved one? No, the position of Mr. Munoz and the position I make is that it was prosecuted as a single broad conspiracy, but that Mr. Munoz, but the proof at trial showed Munoz's participation was on one day, December 3rd of 2015, the very last days of the prosecutor defense. Let me point out something that I've just shown Mr. Alexander this morning and it's very instructive and illustrative of the point. It's a case that was rendered on October 31st of 2019, U.S. v. Anthony. I'll ask leave of court to supply that to your honors. What that case stood for was a broad conspiracy involving multiple individuals over the course of multiple months, but where the evidence shows the defendant's participation is of one instance, one act, one transaction, which resulted in a fatal variance and prejudice to the defendant. Essentially, the core argument of Mr. Munoz in the case is that whether it be one broad conspiracy or whether it be two conspiracy as charged in separate counts, his participation was shown to be so small, one incident, one day, one attempt at either delivery or possession or possession with intent to distribute a two kilo quantity of heroin that the fatal variance was shown by the proof at trial. That was the prejudice to him. Now the government takes the position, Mr. Mejia, you're incorrect. It's not one broad conspiracy because it's alleged in two counts. Well, experience tells us that a single conspiracy is often broken down by overt acts. It's often broken down by individuals charged with single acts or substantive offenses. I think that's essentially what we have here. In the way the jury was instructed, in the way the instructions went to the jury for deliberation, essentially the court talked to, what is a conspiracy? It takes individuals joining together in agreement to violate the law. What else? Someone with knowledge and that criminal purpose. And essentially that's what we have here. The jury was shown by evidence that essentially somewhere in July of 2015, there was ample evidence day after day after day of transactions with Mr. Watkins and Mr. Pitts. On August 27th of 2015, Mr. Watkins' participation in the conspiracy ends. From that date on, from late August until December 3rd, there is a number of conversations, meetings, transactions, discussions with people other than Mr. Munoz. On December 3rd, Mr. Munoz comes on the scene. Are you saying that the evidence was insufficient because of his alleged participation on one day with one transaction? I'm saying that we don't make the argument that the evidence was insufficient to convict. What I am saying is that the evidence showed that his participation was so slight, incidental as to one date, that this resulted in a fatal variance because he was tried in this conspiracy that allegedly took place over the course of something like two years. The evidence was substantial as to this Mr. Diaz Fernandez. The evidence was substantial as to Mr. Watkins. The evidence was different as to Mr. Pitts. There's absolutely zero connection between Mr. Pitts and Mr. Munoz. Essentially, as the Anthony case points out, and as the cases I've tried to cite to the court to assist your honors, is that his participation was one day. I'd be We've taken you a little bit over your time, but you're into your rebuttal time. If you want to continue, you can. No, I'll reserve that, your honors. Okay. And I'll thank you very much. Thank you. Thank you. You reserved your full time, Mr. Mejia. Thank you. Thank you, sir. Mr. Gonzales. May it please the court, counsel. I represent Mr. Pitts, and Mr. Pitts is charged with count three. And that conspiracy, your honor, goes from at least the indictment alleges January of 2015 to December 17, 2015. We're challenging the sufficiency of the evidence with regards to that count and also with regards to the fact that the government did not prove up a hundred grams or more of heroin. Mr. Pitts' involvement derives, and he's basically only connected, there's 11 people charged in that count, but his involvement ties into one person, Sean Watkins, and the testimony at trial from Special Agent Stankiewicz at for wiretaps. And neither one of those was Mr. Pitts ever mentioned. Now, there was a Jeffrey Pitts mention in those affidavits. That led to a pen register being placed on phone numbers tied to Sean Watkins. And also, with that, in those pen register, none came back to Jethro Pitts either. And that's through Government's Exhibit 6, and the docket entries are the same with regards to the agent's testimony. Now, there's a confusion between a Jeffrey Pitts and Jethro Pitts. As a matter of fact, the vehicle, the Pontiac vehicle that's captured, because not only was there the phone taps, the pen register, but there was also a pole camera, and there was also surveillance camera at the apartment that Mr. Watkins' mother resided at. That's the apartment where Mr. Watkins kept his drugs. Now, there are two conspiracies here. One is that Mr. Watkins and Shelton Ehren from here, who are childhood friends, would travel to Atlanta to get heroin. You're talking about kilo amounts. Now, none of that has to do with Mr. Pitts. Now, what happens is that Mr., at least according to the government, and Mr. Watkins testified to this, there are intercepted phone calls. And there is where they say that it's Jethro Pitts, even though at times in the conversation, there is confusion, and Jeffrey Pitts is mentioned by Mr. Watkins himself. And those calls begin on July 18th through August 16th. There are recordings of July 18th, 23rd and 24th, 27th and 28th, August 4th, 6th, 8th, 15th and 16th. And then, here's the key. The phone number that they are connecting to my client, Jethro Pitts, on August 22nd, Sean Watkins leaves a message, calls, and in that message, there is no one picking up. But the voicemail, the voice recording, identifies himself as, my name is Jeff Pitts. And Jeff Pitts is the detective Stankiewicz only testified as to his interpretation of the phone calls. Was there any testimony about Jethro Pitts' alleged involvement aside from the phone calls? Did Mr. Watkins testify about your client being personally involved? Mr. Watkins did testify that he was personally involved with Mr. Pitts. But what I'm pointing out to the court is that the poll camera and the security camera from the apartment complex never produced Jethro Pitts. All it produced was a vehicle that was tied in to Jeffrey Pitts. Detective Weaver, because they showed the jury photographs of that vehicle on July 29th of 2015, and Detective Weaver testified that he could not identify who was in that vehicle. And that vehicle is tied in to Jeffrey Pitts, not Jethro Pitts. All right. Thank you, Mr. Gonzalez. You saved your time for rebuttal. Thank you. Mr. Alexander. Thank you, Your Honors. To the honorable panel, Mr. Mejia, Mr. Gonzalez, may it please the court, I'm Assistant U.S. Attorney Ajay Alexander on behalf of the United States. In regards to the issue that was raised by Mr. Munoz, or on behalf of Mr. Munoz regarding the variance issue, as Judge Newsom had pointed out, the government had correctly identified two separate conspiracies. Count one involved Mr. Munoz. Count three involved Mr. Pitts. At no point was there one conspiracy tying them both in. So the variance argument doesn't necessarily apply here. That leads me to a question on an issue that wasn't raised here, but I'm just interested in finding out the answer. Why were these two conspiracies tried together? Because Sean Watkins was the critical element tying the individual there, Your Honor. And my response would be so. So you're asking a jury to figure out, because of the involvement of one overlapping participant, conspiracies involving how many players? Twenty-something? Correct. And to keep those two things separate and to figure out the evidence against one that Mr. Watkins testifies to and the evidence about the other that Mr. Watkins testifies to, and keep all of these conspiracies separate, even though they're alleged to have been happening at around the general same time? Yes, Your Honor. And the reason... That seems like a mess and a prescription for error. Maybe not in this case, but I mean, I would have understood if Mr. Watkins had been on trial, right? Because then you've got one participant in each of the overlapping conspiracies there. So you've got conspiracy one, Watkins and Munoz, conspiracy two, Watkins and Pitts. But here, these two gentlemen had nothing to do with each other. That's true, Your Honor. Nothing, except for the fact that they both dealt with Mr. Watkins at some point. That doesn't seem like the sort of case that should be tried together. I presume no one made a motion to sever the trials? Correct, Your Honor. Well, Your Honor, in this particular case, there's a significant overlap of what the evidence, in terms of the witnesses that would be called if there were two separate trials. And it made sense to be able to... But convenience doesn't make for an appropriate trial. The evidence was different. It's true, but because these individuals... Because otherwise, you wouldn't have charged two separate conspiracies. Well, the reason for charging two separate conspiracies is because we have a supply chain and a distribution chain. The connection was Sean Watkins. So to understand the flow of heroin, it had to involve this in one indictment, one trial. So the jury has an understanding as to how the heroin was transported from Mexico to Atlanta and ultimately to Miami. The distribution chain where Jethro Pitts was involved and the supply chain in which Mr. Munoz was involved, they're on opposite sides of the spectrum. But the reality is the evidence was very distinct as to each individual. So there's no question that the evidence against Mr. Pitts would not be the same in the other direction. I know. That's my whole point. Right. So I think in this particular... Why two separate cases within one? Not necessarily, Your Honor, because again... You just told me that there was a distribution conspiracy that was separate from the other one. There is a distribution conspiracy charge in count three. Correct, Your Honor. That is separate from the supply chain. But the individual in question, Sean Watkins, his testimony ties everything together in terms of how this came about, provides historical background as to how he became involved, which would have just been essentially regurgitated at a second trial. So for this purpose, Your Honor, trying in the same case, it doesn't affect either defendant in terms of them being able to represent themselves and essentially attacking the evidence that was presented against them at trial. So in this proceeding, when we look at the first Mr. Munoz's contention that this was a variance argument or the argument that there were no variances, Mr. Munoz's involvement was not just confined to one day, which was December 3rd. His involvement is significantly more involved in this conspiracy because if we were to accept the characterization presented by Mr. Mejia as to Mr. Munoz's involvement, the court would have to disregard 80-85% of the evidence presented at trial. There was no mention by Mr. Mejia about the telephone that Mr. Munoz possessed that was used exclusively to make long-distance phone calls to Joel Diaz Fernandez. And based upon that phone, there were approximately 437 phone contacts between July of 2015 until December of 2015, which included text message communication about the location of an apartment in Atlanta belonging to Cresencio Silverio, also known as Crencho, and Margarita Barragan Velez. This was the Atlanta distribution hub. Munoz's role, as noted in Government's Exhibit 6-53A, is to be the runner. He was the one who was taking the drug proceeds and bringing it into Mexico, and he would sneak across the border in order to do that. This was disclosed by Nephew, who is in the same level as Joel Diaz Fernandez. Nephew disclosed this information to Sean Watkins in a recorded call in order to encourage Watkins to make a third trip to Mexico. Munoz's involvement was very significant, and also we got from the testimony of Sean Watkins that they actually met in Mexico in April of 2015 to discuss heroin, or at least Watkins was there to discuss with the individual identified only as No Pictures to renegotiate the price of a heroin, and Munoz was present there. So to say that he was only involved on that one specific day on December 3rd is just wrong. As it pertains to the argument by counsel for Jethro Pitts, the evidence was sufficient. There were numerous recorded phone calls showing the communication between Sean Watkins and Jethro Pitts. The identification of the vehicle utilized by, or registered to, Jeffrey Pitts is just the fact that Jethro Pitts was utilizing his son's vehicle, and as noted in the testimony of Special Agent Stankiewicz, that they also using his phone number. He was using a, yes, your honor, he was using the phone number identified there as well, but the voice identification on each of these calls was associated with Jethro Pitts. That's the whole point of this, of focusing on Jethro. In the beginning, law enforcement, during a course of a long investigation, they're going to identify individuals based on limited information, but through the use of the wiretaps, they're able to firm up the evidence and realize that although initially Jeffrey Pitts was identified in the affidavit, the evidence pointed directly to that focus. Jeffrey wasn't involved, and that's the whole point of it. In fact, that goes against Jethro because he was utilizing his son's information to essentially distance himself from culpability. The problem is with all these recorded phone calls, what we're seeing is Jethro Pitts' involvement, and he was the one who was moving multiple packs of heroin on a daily basis. When we're looking at the quantity itself, we're looking at quantities of two packs a day to five packs over the course of two to three days, and when we do the math, we go over the 100-gram threshold. So even if we look at defense counsel's argument that his client was involved for 23 days, which the government doesn't agree with, but even if we were to use that number of 23, an average of two packs a day, each pack consisting of 100 capsule, that's every 100 capsule has three to four grams, so that's approximately six grams of heroin in a two-pack. So six grams of heroin over the course of 23 days pushes us over the 100-gram threshold. There was testimony that these transactions were happening every day? There was testimony from Sean Watkins, your honor, that the transaction that the he was providing Jethro Pitts two packs a day, this is noted in docket entry 443 page 39, or five packs over the course of two to three days, and that occurred docket entry 443 page 61. So it over the course of what time period did he say? From spring 2015 until the end of August. Now spring obviously isn't the most specific starting point, but when we look at August and compare to the time span of the conspiracy, you're looking at around April or May if we're looking at the spring mark. So it's a multiple over the course of multiple months. The recordings themselves began from the course of the wiretap on July 18th through the end of August. So we have those recorded calls associated with Jethro Pitts. And not only with that, in terms of Jethro Pitts, there were statements from him regarding his use of a subordinate to essentially move packs on his behalf. So this wasn't a case where Jethro Pitts was oblivious to what was going on. In fact, on one conversation Jethro Pitts attempted to purchase an ounce of heroin for $2,000 when Sean Watkins testified that he typically sold an ounce for $2,200. So what we're seeing here is Jethro Pitts' involvement in terms of the trafficking of heroin and the 100-gram threshold, Your Honor. It's a low threshold, but it is a threshold that the government met and the evidence is sufficient in that regard. And when we take the evidence in the light most favorable to the government and all reasonable inferences in the government's favor, the government satisfied that as well. Your Honor, if the court has any other questions, I am happy to answer. If not, the government would rest on its briefs. All right. Thank you so much, Mr. Alexander. I'll talk as swiftly as I can. Mr. Alexander essentially, I think, unthinkingly concedes the point. It is Watkins who is the bridge between what he calls two It is Watkins who, from 2015 mid to August 27, who is involved in this low-level, street-level distribution conspiracy with Pitts. At August 27, Watkins becomes a confidential informant. He exits the conspiracy. He's no longer a conspirator. Thereafter, in the time period of gathering evidence against Diaz-Fernandez and Mr. Munoz. I disagree with counsel with respect to his characterization of my client's involvement. Mr. Munoz was there in Mexico in 2014 at some conversation between Diaz-Fernandez and Watkins. He's not a participant. He doesn't join in anything. There's no evidence of that. I'm not sure that that's the only way to read that evidence, given that the jury verdict was in favor of a conviction. The jury verdict was guilty of one kilo or more. The government at sentencing sought to attribute something like 20 kilos or more to Mr. Munoz based upon their contention that he was involved in a six kilo, a five kilo, two double two kilo transactions. All of this was rejected. You're talking about the drug amount now and not the variance issue? Well, they both really kind of dovetail into each other. But essentially, the jury found one kilo or more. The jury was instructed, you may find any amount in order to convict the defendant of conspiracy to distribute heroin. But the point I make is that this was essentially a single conspiracy prosecution. The justification for trying these two together had to be because Watkins was the bridge between two conspiracies and a chain conspiracy. But the evidence didn't show that. The evidence showed that Mr. Munoz was only involved on December 3rd. Now, yes, they have certain potential evidence of there is a telephone in his possession with a number of phone calls between that telephone and the telephone of Mr. Diaz-Fernandez. But if I give my cousin or my brother who's in the construction business my phone to make a phone call, he's not involved in 400 or 600 legal phone calls and therefore a lawyer. That's speculative. That's remote. And I don't believe the jury found that. If they had or if the court believed it, that comes back to the quantity issue. We get down at sentencing to the question of whether or not Mr. Munoz was rightly attributed with two kilos or more. I submit that he was only involved in two and I won't take any more of the court's time and I appreciate your attention very much. Thank you very much, Mr. Mejia. Your Honors, a couple of points here. Assuming that, you know, as the law is that you're to look at the facts or the inferences and whether or not it's true that Mr. Munoz was not involved in the phone call, supports the verdict, okay? Even with that in mind, looking at the actual evidence besides Mr. Watkins' testimony, because neither Detective Devers nor Agent Stankiewicz could testify to any transaction whatsoever. There are several things here. The record and Mr. Watkins' testimony, document entry 443 at pages 38 through 40, he goes on to testify that several things, and also Agent Stankiewicz testified to this early on, and that is that from the period of time of July 28th through August 4th, Sean Watkins is off on a trip with his girlfriend to Amsterdam on vacation. Subsequent to him returning is when he goes off to Atlanta. Mr. Pitts, my client, is supposed to be transacting with Sheldon Aiden. Well, there's never any, even though there's a poll camera, there's only one on one occasion during that that you could say, well, that's the vehicle driven by Mr. Pitts, Jethro Pitts, only on one occasion. It shows up. So all the other transactions would have had to have been between Sean Watkins and Jethro Pitts. Mr. Watkins testified that it wasn't, as the government argues, that he gave Mr. Pitts drugs on a daily occasion, but basically he says that every two days or so, two days, he would give them something. Now, all of this is only tied into these 10 or 11 days of transactions because the pen registers back up our contention, and that is that there was no contact between any phone number attributed to Mr. Pitts, Jethro Pitts. The evidence showed that whatever communication was had between Sean Watkins and Jethro Pitts was by way of phone. Mr. Watkins testified. There were not any secret meetings where Mr. Pitts would just show up. No, it was all by way of phone calls. If the pen registers do not have him in communication with Mr. Watkins and the recorded calls that do, you know, believing that that is him on the other line, then we're talking about 10 transactions. It's clearly less than 100 grams of heroin. My time is up. Thank you very much, Mr. Gonzalez. Thank you, Your Honor. Thank you all very much. We appreciate it. Thank you.